UNITED STATES BANKRUPTCY COURT    EASTERN DISTRICT OF WISCONSIN

In the Matter of:

**MAYVILLE DIE & TOOL, INC.,**

Debtor.

In Bankruptcy No.

11-33128

## MOTION REQUESTING USE OF CASH COLLATERAL

Debtor Mayville Die & Tool, Inc. ("Debtor" or "Mayville"), by counsel Jane F. ("Ginger") Zimmerman and Rebecca R. DeMarb of Murphy Desmond S.C., hereby files this Emergency Motion Requesting Use of Cash Collateral (the "Motion") and, in support of this Motion, states as follows:

1. On the date of this Motion (the "Petition Date"), the Debtor filed its Petition for protection pursuant to Chapter 11 of Title 11 of the United States Code.

2. Mayville is continuing in possession of its property and is operating and managing its business pursuant to 11 U.S.C. §§ 1107 and 1108.

3. To date, a creditors' committee has not been established and a trustee has not been appointed.

4. Mayville is a Wisconsin Corporation owned by an Employee Stock Ownership Plan ("ESOP"). In existence since 1935, Mayville is a machining company that specializes in large forging dies for use by customers in aerospace, windmills, railroad, airline, large

Jane F. (Ginger) Zimmerman
jzimmerman@murphydesmond.com
Rebecca R. DeMarb
rdemarb@murphydesmond.com
Erin A. West
ewest@murphydesmond.com
Murphy Desmond S.C.
33 East Main Street Suite 500
P.O. Box 2038
Madison, WI 53701-2038
(608) 257-7181
(608) 257-4333 facsimile

26010-118056-3rrd/jfz-250811cjm/kka/srs
motion to use cash collateral
Case 11-33128-jes    Doc 2    Filed 08/25/11    Page 1 of 6

yacht racing boats and large equipment manufacturers. Mayville employs 22 people full time at its location in Mayville, Wisconsin.

5. On the Petition Date, Mayville was indebted to Hometown Bank of Fond du Lac, Wisconsin (the "Bank") in the approximate amount of $2,576,859.01.

    a. The lending relationship between the Bank and Mayville dates back to 2002. In 2003, the Debtor and the Bank entered into a Term Loan in Part A and Part B in the original principal amount of $2 Million and $500,000, respectively, at the non-default interest rate of 7.25% per year and regular monthly payments of approximately $21,800 per month. On the Petition Date, Mayville was indebted to the Bank, on the Term Loan, in the amount of approximately $1,324,917.43.

    b. In addition to the Term Loan, Mayville is indebted to the Bank pursuant to a Note entered into in October of 2009, in the original amount of up to $1,462,500.00, plus interest at the rate of prime plus 2.5% (currently 5.75%) per annum (the "2009 Note"). On the Petition Date, Mayville was indebted to the Bank, on the 2009 Note in the amount of approximately $1,251,941.58.

6. The Bank claims a security interest in substantially all of Mayville's assets.

    a. The Bank recorded the following mortgages against the real estate Mayville owns located at 700 Furnace Street, Mayville, Wisconsin (the "Real Estate") with the Dodge County Register of Deeds: July 5, 2002, as Document Number 960801; May 1, 2003, as Document Number 988263; and November 19, 2009 as Document Number 1137367.

26010-118056-3rrd/jfz-250811cjm/kka/srs
motion to use cash collateral
Case 11-33128-jes    Doc 2    Filed 08/25/11    Page 2 of 6

b. The Bank perfected its interest in personal property collateral, including cash collateral, granted pursuant to Security Agreements dated May 1, 2003 and November 12, 2009, and General Business Security Agreements dated June 28, 2002 and October 31, 2003, by filing UCC-1 Financing Statements with the Wisconsin Department of Financial Institutions on July 1, 2002, May 6, 2003, November 4, 2003, and January 16, 2009.

c. In addition, the Bank's collateral includes purchase money security interests in various specific equipment by virtue of a Chattel Security Agreement dated May 1, 2003, and Financing Statement filed on May 20, 2003, and a Commercial Security Agreement dated November 12, 2009, and Financing Statement filed on November 17, 2009.

d. Bank has further perfected its interest in fixtures by virtue of a Financing Statement filed with the Dodge County Register of Deeds on May 1, 2003 and continued on January 22, 2008.

7. In addition to Hometown Bank, Citibank, NA, claims a security interest in any accounts receivable from Alcoa Inc., pursuant to an agreement and a UCC-1 Financing Statement filed on January 3, 2005, continued September 22, 2009.

8. In 2007, the ESOP, which is and acts as the shareholders of the corporation, voted to remove the president and the board of directors of Mayville, and then hired a new board of directors and a new temporary CEO. Soon after, Mayville spent over $1.5 million on equipment without setting up proper lines of credit, and paid down approximately $200,000 on its term debt, again without penning up any ability to borrow on a line of credit.

9. Due to the decisions made in 2007, coupled with a downturn in business and the general economy, Mayville has experienced serious cash flow issues. The Bank has

26010-118056-3rrd/jfz-250811cjm/kka/srs
motion to use cash collateral    Case 11-33128-jes    Doc 2    Filed 08/25/11    Page 3 of 6

refused to advance any further funds. Although Mayville searched for a new lender, it was not able to find one willing to finance the operations of the business.

10. Mayville began looking for a buyer of the business after it became clear that it would not be able to avoid default with the Bank or borrow additional operating capital. Since late 2010, Mayville has been in contact with seven companies to find a potential buyer. To date, the highest and best offer to purchase has been made by Mayville Asset Acquisition, LLC (the "Stalking Horse") in the Asset Purchase Agreement dated August 24, 2011 (the "APA").

11. Mayville's ability to operate and pay its employees became contingent upon its entering into the APA. The base purchase price of the APA, subject to adjustments, is $2.3 million. The APA required Mayville's chapter 11 filing so that the Stalking Horse may receive the benefits of 11 U.S.C. § 363.

12. The statutory predicate for the relief requested in this Motion is 11 U.S.C. § 363(c)(2).

13. On and after the Petition Date, the Debtor will be operating in the ordinary course of business so that it may consummate the sale of substantially all of its assets.

14. The Debtor's accounts receivable generally consist of checks that the Debtor receives from customers. The Debtor has cash on hand of approximately $18,500.00 and will have accounts receivable of approximately $400,000.00 that will be collectible over the next 90 days.

15. To pay operating expenses, the Debtor must use cash collateral in which Hometown Bank has an interest. The Debtor proposes to use cash collateral over the next 90 days to continue operating.

...

16. Hometown Bank is undersecured in this case. However, Debtor believes that Hometown Bank's collateral position will be unchanged by Debtor continuing to operate. While it will collect accounts receivable and use cash, it will be generating new accounts receivable and cash.

17. To provide Hometown Bank with adequate protection, the Debtor proposes the following:

   a. Debtor will provide Hometown Bank with a replacement lien on all post-petition accounts receivable to the extent that the use of the receivables results in a decrease in the value of Hometown Bank's interest in the receivables pursuant to 11 U.S.C. § 361(2).

   b. Debtor will maintain adequate insurance coverage on all real and personal property assets and adequately insure against potential loss.

   c. Debtor will provide Hometown Bank with financial reports, via the monthly operating reports, on a monthly basis.

   d. Debtor will only expend cash collateral as is necessary and in the ordinary course of business.

   e. Debtor will pay all post-petition taxes.

   f. Debtor will maintain in good condition and repair all collateral in which Hometown Bank has an interest.

18. Should Debtor default in the provision of adequate protection, Hometown Bank will have the opportunity to obtain further relief from the Court.

19. It is critical to the continuation of the business to authorize use of cash collateral. Furthermore, the Debtor is not acknowledging that all future revenue should be

26010-118056-3rrd/jfz-250811cjm/kka/srs
motion to use cash collateral
Case 11-33128-jes    Doc 2    Filed 08/25/11    Page 5 of 6

collateral for Hometown Bank. Based upon the equities of the Case, Debtor should be authorized to use revenue to operate the business.

20. Approval of Debtor's use of cash collateral is in the best interest of the estate and its employees as it will allow Debtor to maintain its ongoing business operations, allow Debtor to generate new and additional accounts receivable and provide the Debtor with the opportunity to sell the assets of the business as a going concern, which Debtor believes will yield a higher value while simultaneously saving the jobs of 22 employees.

**WHEREFORE**, Debtor requests that the Court enter an order allowing it to use cash collateral in the ordinary course of business, grant Hometown Bank a replacement lien and other adequate protection as set forth herein, and grant Debtor such other and further relief as it just and equitable under the circumstances.

Dated this 25 day of August, 2011.

**MURPHY DESMOND S.C.**
Attorneys for Debtor

By: _____
Jane F. (Ginger) Zimmerman
State Bar No. 1012103
Rebecca R. DeMarb
State Bar No. 1026221
33 East Main Street Suite 500
P.O. Box 2038
Madison, WI 53701-2038
(608) 257-7181