# UNITED STATES BANKRUPTCY COURT     EASTERN DISTRICT OF WISCONSIN

In the Matter of:

**MAYVILLE DIE & TOOL, INC.,**

Debtor.

In Bankruptcy No.

*11-33128*

## MOTION FOR ORDER AUTHORIZING DEBTOR IN POSSESSION TO INCUR POST-PETITION SECURED INDEBTEDNESS AND GRANTING SECURITY INTERESTS AND PRIORITY

Mayville Die & Tool, Inc., debtor and debtor-in-possession ("Mayville"), by its counsel Rebecca R. DeMarb and Murphy Desmond S.C., hereby moves the Court for authority to incur post-petition indebtedness and granting protection to A. Finkl & Sons, Co., pursuant to the Asset Purchase Agreement (the "APA") between Mayville and Mayville Asset Acquisition Co. or its affiliates including A. Finkl & Sons Co., Inc. (the "Stalking Horse") for such amounts, and in support of this Motion, Mayville states as follows:

1.     On the date of this Motion (the "Petition Date"), the Debtor filed its Petition for protection pursuant to Chapter 11 of Title 11 of the United States Code.

2.     Mayville is continuing in possession of its property and is operating and managing its business pursuant to 11 U.S.C. §§ 1107 and 1108.

Jane F. (Ginger) Zimmerman
jzimmerman@murphydesmond.com
Rebecca R. DeMarb
rdemarb@murphydesmond.com
Erin A. West
ewest@murphydesmond.com
Murphy Desmond S.C.
33 East Main Street Suite 500
P.O. Box 2038
Madison, WI 53701-2038
(608) 257-7181
(608) 257-4333 facsimile

26010.118056-3rrd/jfz-250811cjm/kka/srs
364 Motion
      Case 11-33128-jes    Doc 3    Filed 08/25/11    Page 1 of 6

3.&#x20;&#x20;&#x20;&#x20;&#x20;To date, a creditors' committee has not been established and a trustee has not been appointed.

4.&#x20;&#x20;&#x20;&#x20;&#x20;Mayville is a Wisconsin Corporation owned by an Employee Stock Ownership Plan ("ESOP"). In existence since 1935, Mayville is a machining company that specializes in large forging dies for use by customers in aerospace, windmills, railroad, airline, large yacht racing boats and large equipment manufacturers. Mayville employs 22 people full time at its location in Mayville, Wisconsin.

5.&#x20;&#x20;&#x20;&#x20;&#x20;On the Petition Date, Mayville was indebted to Hometown Bank of Fond du Lac, Wisconsin (the "Bank") in the approximate amount of $2,576,859.01.

&#x20;&#x20;&#x20;&#x20;&#x20;a.&#x20;&#x20;&#x20;&#x20;&#x20;The lending relationship between the Bank and Mayville dates back to 2002. In 2003, the Debtor and the Bank entered into a Term Loan in Part A and Part B in the original principal amount of $2 Million and $500,000, respectively, at the non-default interest rate of 7.25% per year and regular monthly payments of approximately $21,800 per month. On the Petition Date, Mayville was indebted to the Bank, on the Term Loan, in the amount of approximately $1,324,917.43.

&#x20;&#x20;&#x20;&#x20;&#x20;b.&#x20;&#x20;&#x20;&#x20;&#x20;In addition to the Term Loan, Mayville is indebted to the Bank pursuant to a Note entered into in October of 2009, in the original amount of up to $1,462,500.00, plus interest at the rate of prime plus 2.5% (currently 5.75%) per annum (the "2009 Note"). On the Petition Date, Mayville was indebted to the Bank, on the 2009 Note in the amount of approximately $1,251,941.58.

6.&#x20;&#x20;&#x20;&#x20;&#x20;The Bank claims a security interest in substantially all of Mayville's assets.

26010.118056-3rrd/jfz-250811cjm/kka/srs
364 Motion&#x20;&#x20;&#x20;&#x20;&#x20;Case 11-33128-jes&#x20;&#x20;&#x20;&#x20;Doc 3&#x20;&#x20;&#x20;&#x20;Filed 08/25/11&#x20;&#x20;&#x20;&#x20;Page 2 of 6

- 3 -

a. The Bank recorded the following mortgages against the real estate Mayville owns located at 700 Furnace Street, Mayville, Wisconsin (the "Real Estate") with the Dodge County Register of Deeds: July 5, 2002, as Document Number 960801; May 1, 2003, as Document Number 988263; and November 19, 2009 as Document Number 1137367.

b. The Bank perfected its interest in personal property collateral, including cash collateral, granted pursuant to Security Agreements dated May 1, 2003 and November 12, 2009, and General Business Security Agreements dated June 28, 2002 and October 31, 2003, by filing UCC-1 Financing Statements with the Wisconsin Department of Financial Institutions on July 1, 2002, May 6, 2003, November 4, 2003, and January 16, 2009.

c. In addition, the Bank's collateral includes purchase money security interests in various specific equipment by virtue of a Chattel Security Agreement dated May 1, 2003, and Financing Statement filed on May 20, 2003, and a Commercial Security Agreement dated November 12, 2009, and Financing Statement filed on November 17, 2009.

d. Bank has further perfected its interest in fixtures by virtue of a Financing Statement filed with the Dodge County Register of Deeds on May 1, 2003 and continued on January 22, 2008.

7. In addition to Hometown Bank, Citibank, NA, claims a security interest in any accounts receivable from Alcoa Inc., pursuant to an agreement and a UCC-1 Financing Statement filed on January 3, 2005, continued September 22, 2009.

8. In 2007, the ESOP, which is and acts as the shareholders of the corporation, voted to remove the president and the board of directors of Mayville, and then hired a new

board of directors and a new temporary CEO. Soon after, Mayville spent over $1.5 million on equipment without setting up proper lines of credit, and paid down approximately $200,000 on its term debt, again without penning up any ability to borrow on a line of credit.

9.     Due to the decisions made in 2007, coupled with a downturn in business and the general economy, Mayville has experienced serious cash flow issues. The Bank has refused to advance any further funds. Although Mayville searched for a new lender, it was not able to find one willing to finance the operations of the business.

10.     Mayville began looking for a buyer of the business after it became clear that it would not be able to avoid default with the Bank or borrow additional operating capital. Since late 2010, Mayville has been in contact with seven companies to find a potential buyer. To date, the highest and best offer to purchase has been made by Mayville Asset Acquisition, LLC (the "Stalking Horse") in the Asset Purchase Agreement dated August 24, 2011 (the "APA").

11.     Mayville's ability to operate and pay its employees became contingent upon its entering into the APA. The base purchase price of the APA, subject to adjustments, is $2.3 million. The APA required Mayville's chapter 11 filing so that the Stalking Horse may receive the benefits of 11 U.S.C. § 363.

12.     The statutory predicate for the relief requested in this Motion is 11 U.S.C. § 364.

13.     Hometown Bank claims a security interest in various collateral of the Debtor, including cash, accounts and receivables. In addition, Citibank claims a security interest in any accounts receivable owed to Mayville by Alcoa.

14.     Mayville cannot operate without some infusion of cash and post-petition financing. Prior to the Petition Date Mayville's cash reserves were very low and Mayville

needs additional cash to fund this Chapter 11 case. Accordingly, Mayville is requesting authority to borrow funds from the Stalking Horse. Prior to borrowing funds, Mayville will attempt to collect and utilize current accounts receivable. However, in situations where cash flow is impaired by either insufficient accounts receivable or timing issues resulting from terms given to its customers, Mayville may request a loan from Buyer. The funds borrowed will not incur interest. All borrowed funds will be a credit on the purchase price if the Stalking Horse is the prevailing bidder for the sale of the Assets and the Stalking Horse closes on such sale. The APA setting forth this agreement is attached as Exhibit A to the Motion for Orders: (1) Authorizing Debtor to Sell Substantially All Assets Free and Clear of Liens, Claims, Interests and Encumbrances Pursuant to the APA; (2) Approving Bidding Procedures and Auction; (3) Approving Break-Up Fee; (4) Authorizing Debtor to Disburse Sale Proceeds; (5) Approving Notice; and (6) Scheduling Further Hearing (the "Sale Motion"), filed contemporaneously with this Motion.

15. The Stalking Horse may not be the ultimate buyer of the Assets. Accordingly, the Debtor is requesting that this Court grant the Stalking Horse the following, all in the amount of the discretionary advances made by the Stalking Horse if the Stalking Horse does not close on the purchase of the Assets: (a) an administrative claim (but with the Stalking Horse's agreement not to pursue the administrative claim until the Debtor's attorneys fees are paid in full), (b) a perfected security interest in and lien upon all unencumbered property of the estate pursuant to 11 U.S.C. § 364(c)(2); and (c) a junior lien on all encumbered property of the estate pursuant to 11 U.S.C. § 364(c)(3). The Debtor has offered a replacement lien on Cash Collateral to the Bank. The post-petition borrowing will allow the Debtor to continue operating so that it may create accounts receivable and cash to give such replacement lien to the Bank.

16.    Mayville has no source of financing other than the Stalking Horse.

17.    The base purchase price of the APA is not sufficient to pay the Bank in full. Therefore, absent an active auction pursuant to the APA and Sale Motion, the only impact of the borrowing and the security interests is to allow Mayville the cash necessary to operate and fund the Chapter 11 case.  The protection to the Stalking Horse does not impede other creditors' interests.  Accordingly, the Bank's interest is adequately protected pursuant to 11 U.S.C. § 364(d)(1).  Given the financial realities of this case, the only opportunity to borrow the necessary cash is from the Stalking Horse.

**WHEREFORE**, Mayville is requesting the authority to borrow funds from the Stalking Horse pursuant to the terms of the APA, to grant it an administrative claim, a security interest in all unencumbered property of the estate and a junior security interest in all encumbered property of the estate, all in the amount of the advances made by the Stalking Horse, and to grant it such other and further relief as is just and equitable.

Dated this 25 day of August, 2011.

**MURPHY DESMOND S.C.**
Attorneys for Debtor and Debtor-in-Possession

By: _____
Jane F. (Ginger) Zimmerman
State Bar No. 1012103
Rebecca R. DeMarb
State Bar No. 1026221
33 East Main Street Suite 500
P.O. Box 2038
Madison, WI 53701-2038
(608) 257-7181

4833-6571-6490, v. 1