UNITED STATES BANKRUPTCY COURT    EASTERN DISTRICT OF WISCONSIN

In the Matter of:

**MAYVILLE DIE &TOOL, INC.,**  Case No. _11-33128_

Debtor.

**DEBTOR'S MOTION FOR AN ORDER AUTHORIZING, BUT NOT DIRECTING DEBTOR TO: (1) PAY PRE-PETITION EMPLOYEE WAGES; (2) PAY OUTSTANDING PAYCHECKS; (3) MAKE PAYMENTS FOR WHICH PAYROLL DEDUCTIONS WERE MADE; (4) MAKE PAYMENTS OF AMOUNTS WITHHELD FOR TAXES; (5) PAY ALL TAXES AND COSTS INCIDENT TO THE FOREGOING PAYMENTS AND CONTRIBUTIONS; AND (6) FOR ALLOWANCE OF EMPLOYEES' POST-PETITION USE OF PRE-PETITION EARNED VACATION TIME**

Mayville Die & Tool, Inc., Debtor and Debtor-in-Possession (the "Debtor"), by its counsel, Jane F. (Ginger) Zimmerman, Rebecca R. DeMarb and Erin A. West of Murphy Desmond S.C., hereby submits this Motion for the entry of an Order authorizing, but not directing, the Debtor, in its discretion and in accordance with its stated policies, to: (1) pay certain pre-petition employee wages, salaries and other benefits; (2) pay outstanding paychecks; (3) make certain payments for which employee payroll deductions were made; (4) make payments of amounts withheld for taxes; (5) pay all withholding taxes and employer taxes and costs incident to the foregoing payment (including payroll related taxes and processing costs), if any, and (6) for allowance of employees' use of pre-petition earned vacation time. In support of this Motion, the Debtor respectfully states as follows:

Jane F. (Ginger) Zimmerman
jzimmerman@murphydesmond.com
Rebecca R. DeMarb
rdemarb@murphydesmond.com
Erin A. West
ewest@murphydesmond.com
Murphy Desmond S.C.
33 East Main Street 5th Floor
P.O. Box 2038
Madison, WI 53701-2038
Phone (608) 257-7181
Fax (608) 257-4333

## JURISDICTION AND STATUTORY AUTHORITY

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are 11 U.S.C. §§ 105(a), 363(b), 507(a)(4) and 541(d) and the provisions of Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101-1532 (the "Code")).

## BACKGROUND

3. On the date of this Motion (the "Petition Date"), the Debtor filed its Petition for protection pursuant to Chapter 11 of Title 11 of the United States Code.

4. Mayville is continuing in possession of its property and is operating and managing its business pursuant to 11 U.S.C. §§ 1107 and 1108.

5. To date, a creditors' committee has not been established and a trustee has not been appointed.

6. Mayville is a Wisconsin Corporation owned by an Employee Stock Ownership Plan ("ESOP"). In existence since 1935, Mayville is a machining company that specializes in large forging dies for use by customers in aerospace, windmills, railroad, airline, large yacht racing boats and large equipment manufacturers. Mayville employs 22 people full time at its location in Mayville, Wisconsin.

7. On the Petition Date, Mayville was indebted to Hometown Bank of Fond du Lac, Wisconsin (the "Bank") in the approximate amount of $2,576,859.01.

   a. The lending relationship between the Bank and Mayville dates back to 2002. In 2003, the Debtor and the Bank entered into a Term Loan in Part

A and Part B in the original principal amount of $2 Million and $500,000, respectively, at the non-default interest rate of 7.25% per year and regular monthly payments of approximately $21,800 per month. On the Petition Date, Mayville was indebted to the Bank, on the Term Loan, in the amount of approximately $1,324,917.43.

b. In addition to the Term Loan, Mayville is indebted to the Bank pursuant to a Note entered into in October of 2009, in the original amount of up to $1,462,500.00, plus interest at the rate of prime plus 2.5% (currently 5.75%) per annum (the "2009 Note"). On the Petition Date, Mayville was indebted to the Bank, on the 2009 Note in the amount of approximately $1,251,941.58.

8. The Bank claims a security interest in substantially all of Mayville's assets.

a. The Bank recorded the following mortgages against the real estate Mayville owns located at 700 Furnace Street, Mayville, Wisconsin (the "Real Estate") with the Dodge County Register of Deeds: July 5, 2002, as Document Number 960801; May 1, 2003, as Document Number 988263; and November 19, 2009 as Document Number 1137367.

b. The Bank perfected its interest in personal property collateral, including cash collateral, granted pursuant to Security Agreements dated May 1, 2003 and November 12, 2009, and General Business Security Agreements dated June 28, 2002 and October 31, 2003, by filing UCC-1 Financing Statements with the Wisconsin Department of Financial Institutions on July 1, 2002, May 6, 2003, November 4, 2003, and January 16, 2009.

  c. In addition, the Bank's collateral includes purchase money security interests in various specific equipment by virtue of a Chattel Security Agreement dated May 1, 2003, and Financing Statement filed on May 20, 2003, and a Commercial Security Agreement dated November 12, 2009, and Financing Statement filed on November 17, 2009.

  d. Bank has further perfected its interest in fixtures by virtue of a Financing Statement filed with the Dodge County Register of Deeds on May 1, 2003 and continued on January 22, 2008.

  9. In addition to Hometown Bank, Citibank, NA, claims a security interest in any accounts receivable from Alcoa Inc., pursuant to an agreement and a UCC-1 Financing Statement filed on January 3, 2005, continued September 22, 2009.

  10. In 2007, the ESOP, which is and acts as the shareholders of the corporation, voted to remove the president and the board of directors of Mayville, and then hired a new board of directors and a new temporary CEO. Soon after, Mayville spent over $1.5 million on equipment without setting up proper lines of credit, and paid down approximately $200,000 on its term debt, again without penning up any ability to borrow on a line of credit.

  11. Due to the decisions made in 2007, coupled with a downturn in business and the general economy, Mayville has experienced serious cash flow issues. The Bank has refused to advance any further funds. Although Mayville searched for a new lender, it was not able to find one willing to finance the operations of the business.

  12. Mayville began looking for a buyer of the business after it became clear that it would not be able to avoid default with the Bank or borrow additional operating capital. Since late 2010, Mayville has been in contact with seven companies to find a potential buyer. To date, the highest and best offer to purchase has been made by Mayville Asset Acquisition,

LLC (the "Stalking Horse") in the Asset Purchase Agreement dated August 24, 2011 (the "APA").

13. Mayville's ability to operate and pay its employees became contingent upon its entering into the APA. The base purchase price of the APA, subject to adjustments, is $2.3 million. The APA required Mayville's chapter 11 filing so that the Stalking Horse may receive the benefits of 11 U.S.C. § 363.

## RELIEF REQUESTED

14. Relief is requested to pay several types of employee compensation and employer expenses and related obligations incurred prior to the Petition Date, and to permit employees' post-petition use of pre-petition earned vacation time, as described below.

### Regular Employees

15. As of the Filing Date, Debtor employed twenty-two (22) active hourly and salaried employees, including approximately eighteen (18) union employees.

16. The active employees perform a variety of critical functions for the Debtor's business. The active employees' skills and their specialized knowledge and understanding of the Debtor's infrastructure, assets and operations, as well as their relationships with customers, vendors and other third parties, are essential to the continued administration of this case, the preservation of the Debtor's business, the Debtor's ability to consummate a successful sale as a going concern, and the Debtor's ability to preserve and maximize the value of its estate. Without the employment of the currently active employees for varying periods of time, the Debtor would not be able to produce products for its customers, fulfill pending orders, and the enterprise value of the Debtor would be lost. Further, in discussions with potential purchasers of some of the Debtor's assets, completion of pending orders is

26010.118056-6eaw/rrd/jfz-250811cjm/srs/kka
wage motion    Case 11-33128-jes    Doc 4    Filed 08/25/11    Page 5 of 14

important to preserving the value of relationships with customers and, therefore, preserving the going concern value of the Debtor's business and assets.

## Pre-Petition Compensation and Outstanding Checks for Pre-Petition Compensation

17. In the ordinary course of the Debtor's business prior to the Petition Date, the active employees were owed or had accrued various sums for wages, salaries, overtime pay, and earned but unused vacation time (collectively, the "Prepetition Compensation"). The Debtor uses ADP as its payroll service provider. The Debtor has a scheduled payroll to be paid on Thursday, September 1, 2011, in the approximate amount of $24,000.00, consisting of Prepetition Compensation owed to active employees that, in the ordinary course of business, would be paid in arrears, and the required payroll withholdings and taxes. The September 1, 2011, payroll would cover compensation earned through and including August 27, 2011. Therefore, on the Petition Date, which is in the middle of a payroll cycle, the employees have earned compensation that was not yet payable.

18. No single employee is owed more than the statutory priority amount of $11,725.00, as set forth in 11 U.S.C. § 507(a)(4) for prepetition wages, salaries, commissions and vacation accrued in the 180 days before the Petition Date. The employees' earned but not yet payable compensation is set forth on Exhibit A, hereto, which is incorporated herein as if set forth in full.

19. Debtor is not seeking in this Motion, and does not request permission to pay accrued vacation to any employee who is terminated or who terminates his or her employment with the Debtor. Neither does Debtor seek to pay any severance to any employee.

20. All payments to be made to employees pursuant to approval of this Motion shall reduce, dollar-for-dollar, each claim of an affected employee pursuant to 11 U.S.C. § 507(a)(4).

### Payroll Deductions

21. As of the Petition Date, the Debtor also had accrued deductions from employees' paychecks to make payments on behalf of employees, at their or some third party's direction, for garnishment and support payments, insurance programs, membership dues, union dues, and other similar programs on account of which ADP, on Debtor's behalf, deducts a sum of money from an employee's paycheck and pays that amount to a third party (collectively, "Deductions"). All of the Deductions collected prepetition had been paid to the appropriate third parties prior to the Petition Date, but may not have been received by the third party, or may not have been processed or cleared the banking system through Debtor's drawee bank by the Petition Date in the ordinary course of business.

22. The Deductions represent amounts withheld from employees' pay with the intention that such amounts will be paid to third party providers or benefit plans. It is Debtor's contention that the Deductions are not property of this estate pursuant to 11 U.S.C. § 541.

### Prepetition Withholdings, Taxes and Related Claims

23. Prior to the Petition Date, ADP, on Debtor's behalf, withheld money from active employees' paychecks on account of various federal, state and local income, FICA, Medicare and other taxes (collectively, the "Withholdings") for remittance to the appropriate federal, state or local taxing authorities (the "Taxing Authorities"). In addition, the Debtor is required to pay the employer portion of such taxes, as well as unemployment compensation contributions, processing fees, administrative charges, and similar obligations ("Taxes") to

Taxing Authorities and third-party providers. The Debtor estimates that the amount of Withholdings attributable to Prepetition Compensation not yet remitted to the third-parties, is less than $10,000.00 in the aggregate, and the outstanding amount of accrued Taxes relating to Prepetition Compensation is less than $10,000.00.

24. Prepetition Compensation, Outstanding Paychecks, Deductions, Withholdings and Taxes were due and owing as of the Petition Date because, among other things:

    a. the Debtor filed its Chapter 11 Petition in the midst of certain of its regular and customary payroll periods;

    b. certain employees have not yet been paid portions of their salaries, contractual compensation and wages for services previously rendered to the Debtor;

    c. certain other forms of compensation related to prepetition employment have not yet been paid to, or for the benefit of, the employees because such amounts, although accrued in whole or in part prior to the Petition Date, were not payable at such time, but rather will become payable in the future in the ordinary course of the Debtor's business; and,

    d. certain forms of Withholdings and Taxes related to prepetition employment have not yet been paid because such amounts, although accrued in whole or in part prior to the Petition Date, were not payable at such time, but rather will become payable in the future in the ordinary course of the Debtor's business.

25. The Debtor seeks authority to pay: (a) Prepetition Compensation (including any outstanding paychecks), (b) Deductions, (c) Withholdings, and (d) Taxes attributable to

the periods prior to the Petition Date to or for the benefit of employees providing services post-petition, or as otherwise provided herein.

26. The Debtor further seeks authority to allow the employees to use vacation time post-petition they are entitled to, that was earned pre-petition but not yet used.

### Basis for Relief

27. The payment of the Prepetition Compensation, Deductions, Withholdings, and Taxes and the use of vacation time is warranted pursuant to 11 U.S.C. §§ 105(a), 363, 507(a)(4), and 541(d) and case law prevailing in this District and elsewhere.

### Amounts Owed to Active employees Enjoy Priority Status Under the Bankruptcy Code and Amounts Withheld are Not Property of the Estate

28. Pursuant to 11 U.S.C. § 507(a)(4) of the Bankruptcy Code, employees are granted a priority claim for:

> ... [A]llowed unsecured claims, but only to the extent of $11,725 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for -
>
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; ...

11 U.S.C. 507(a)(4).

29. In this case, the Debtor believes that the Prepetition Compensation owing to or on account of any particular Active employee will not exceed the sum of $11,725 allowable as a priority claim under 11 U.S.C. § 507(a)(4), and such payments shall be credited as an advance payment to the recipients for their respective claims under 11 U.S.C. § 507(a)(4). Therefore, the payment of the amounts pursuant to this Motion would not deplete assets otherwise available to creditors having a lower priority claim under a plan or other distribution in accordance with 11 U.S.C. § 507.

30. Section 541(d) of the Bankruptcy Code excludes, ". . . property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest." 11 U.S.C. § 541(d). Deductions, such as garnishments, support payments, 401(k) contributions and Withholdings, fall within this § 541(d) definition, do not constitute property of the estate, and should be paid to the appropriate third parties.

### Section 363(b) and Section 105(a) of the Bankruptcy Code Also Provide a Basis for Granting the Requested Relief

31. After notice and a hearing, the debtor-in-possession, ". . . may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

32. Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of bankruptcy courts, authorizes the Court to, ". . . issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]." 11 U.S.C. § 105(a).

33. Bankruptcy courts have the equitable power to authorize the payment of prepetition claims where such payments are necessary to preserve the value of a debtor's business or assets, thereby facilitating the chapter 11 process. *See, e.g., Miltenberger v. Logansport, Crawfordsville & Sw. Ry. Co.*, 106 U.S. 286, 311 (1882) (holding that "[m]any circumstances may exist which may make it necessary and indispensable to . . . the preservation of the property, for the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership . . . ."); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-87 (S.D.N.Y. 1987) (finding that a court's equitable powers include authorizing a debtor to pay prepetition debts). As such, a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not

a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *Miltenberger*, 106 U.S. at 311).

34. The majority of the value of Debtor's business in a § 363 sale is dependent upon its ability to continue as a going concern, including the maintenance of its workforce and customer base. Without continuing payments to the Debtor's employees it is unlikely that the workforce would remain highly motivated to produce quality products—if the employees would even remain in the Debtor's employ.

35. The bankruptcy court's exercise of its authority under § 105(a) is appropriate to carry out specific statutory provisions of Chapter 11, specifically §§ 363(b)(1), 1107(a) and 1108 of the Code, which authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. Indeed, courts have consistently held that a debtor in possession has a duty to protect and preserve the value of its assets, and prepetition claims may be paid if necessary to perform the debtor's duty.

36. The Federal Rules of Bankruptcy Procedure confirm that the Court may authorize the post-petition satisfaction of prepetition claims by reference to these standards. The power is specifically provided for in the exception contained in Fed. R. Bankr. P. 6003(b), which provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition . . . ." This rule plainly provides that, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtor's estate, the Court may allow the Debtor to pay (prior to the twenty-first day following the Petition Date) all or part of a prepetition claim.

37. The Debtor's active employees are essential to operating its machining facilities in a safe and prudent manner, administering this case, and preserving the value of the Debtor's business assets. Any delay or disruption in the payment of Prepetition Compensation under these extraordinary and difficult circumstances will destroy the Debtor's relationships with its employees and will irreparably impair morale of the Debtor's remaining workforce at the very time when the dedication, confidence and cooperation of the employees are most critical. There are no practical or legal alternatives to retention of the employees. As a result, Debtor seeks to use the payment of Prepetition Compensation as an effort to garner post-petition services from its employees. Not doing so would substantially jeopardize the value of the Debtor's business.

38. In light of the foregoing, the Debtor respectfully submits that the payment of the Prepetition Compensation, Deductions, Withholdings and Taxes and use of vacation time is essential to the success of the Debtor's Chapter 11 case, represents an exercise of the Debtor's sound business judgment, and is in the best interests of the Debtor's estate and stakeholders.

39. The Debtor anticipates that it will have access to sufficient funds from use of cash collateral and/or debtor in possession financing to pay all Prepetition Compensation, Deductions, Withholdings, and Taxes, to the extent described herein, as such amounts become due in the ordinary course of its business.

40. Nothing contained herein is intended or should be construed as: (a) an admission as to the amount, validity or priority of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim is a claim for Prepetition

Compensation, Deductions, Withholdings, or Taxes; or (e) a request to assume any executory contract or unexpired lease, pursuant to 11 U.S.C. § 365.

### Request for Waiver of Stay

41. Pursuant to Fed. R. Bankr. P. 6003(b) and 6004(h), the Debtor seeks immediate entry of an order granting the relief sought herein notwithstanding any stay of the effectiveness of such an order.

42. No prior request for the relief sought in this Motion has been made to this or any other Court.

**WHEREFORE,** the Debtor respectfully requests that this Court: (i) enter an order granting the relief sought herein; and (ii) grant such other and further relief to the Debtor as the Court may deem proper.

Dated this 25th day of August, 2011.

**MURPHY DESMOND S.C.**
Attorneys for Debtor

By: /s/
Jane F. (Ginger) Zimmerman
State Bar No. 1012103
Rebecca R. DeMarb
State Bar No. 1026221
Erin A. West
State Bar No. 1075729
33 East Main Street Suite 500
P.O. Box 2038
Madison, WI 53701-2038
(608) 257-7181

**MAYVILLE DIE & TOOL, INC.**

| EMPLOYEES: | Priority Vacation Claim | Unsecured Vacation Claim | Priority Wage Claim | Total Priority Claim | Total Claim |
|---|---|---|---|---|---|
| JOHN D. BAUMHARDT | $3,430.56 | $2,940.48 | $755.92 | $4,186.48 | $7,126.96 |
| BARRY L. BEHNKE | $3,267.20 | $326.72 | $592.18 | $3,859.38 | $4,186.10 |
| STEVEN R. BONACK | $2,001.16 | $1,143.52 | $490.08 | $2,491.24 | $3,634.76 |
| JERRY J. CLARK, JR. | $0.00 | $3,267.20 | $490.08 | $490.08 | $3,757.28 |
| FRANCIS E. EILBES | $0.00 | $4,189.92 | $776.58 | $776.58 | $4,966.50 |
| CHAD A. GEIGER | $1,062.14 | $3,140.24 | $554.16 | $1,616.30 | $4,756.54 |
| JAMES G. HECHIMOVICH | $1,551.92 | $1,470.24 | $530.92 | $2,082.84 | $3,553.08 |
| GLEN HELMBRECHT | $3,244.80 | $11,032.32 | $973.44 | $4,218.24 | $15,250.56 |
| THOMAS E. HELMBRECHT | $0.00 | $3,973.20 | $802.40 | $802.40 | $4,775.60 |
| GREGORY KRAPFL | $0.00 | $7,468.08 | $772.56 | $772.56 | $8,240.64 |
| GARY METKE | $0.00 | $8,323.52 | $675.00 | $675.00 | $8,998.52 |
| ANN RAYOME | $0.00 | $1,352.16 | $436.63 | $436.63 | $1,788.79 |
| JOHN C. REGNER | $0.00 | $5,064.16 | $816.80 | $816.80 | $5,880.96 |
| LARRY M. RETZLAFF | $0.00 | $4,083.82 | $0.00 | $0.00 | $4,083.82 |
| DAVID P. RUBEL | $3,430.56 | $0.00 | $500.29 | $3,930.85 | $4,911.01 |
| MICHAEL S. RUBEL | $0.00 | $4,247.36 | $501.28 | $501.28 | $4,748.64 |
| GREGG H. SCHAMPERS | $3,034.08 | $0.00 | $300.16 | $3,334.24 | $3,334.24 |
| JOHN C. SCHRAUFNAGEL | $4,900.80 | $2,082.84 | $816.80 | $5,717.60 | $7,800.44 |
| GREGORY A. SCOTT | $3,625.60 | $412.00 | $885.80 | $4,511.40 | $4,923.40 |
| MICHAEL WANTZ | $1,056.64 | $132.08 | $427.20 | $1,483.84 | $1,615.92 |
| JOSEPH J. WIEMER | $0.00 | $2,940.48 | $510.50 | $510.50 | $3,450.98 |
| MICHAEL WIEMER | $1,475.20 | $1,475.20 | $461.76 | $1,936.96 | $3,412.16 |
| | $32,080.66 | $69,065.54 | $13,070.54 | $45,151.20 | $114,216.74 |

**EXHIBIT A**